IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:03CV109-1-MU

| | |
|---|---|
| VINCENT EARL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| LT. GOULD, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court upon Defendant's Motion for Summary Judgment, filed November 10, 2003; Plaintiff's Motion to Dismiss, filed November 10, 2003; and Plaintiff's Motion for Default Judgment, filed November 15, 2004.

## FACTUAL BACKGROUND

In his March 10, 2003, Complaint Plaintiff alleges that Defendant Gould violated his rights under the Religious Land Use of Institutionalized Persons Act of 2000 (RLUIPA) and the Religious Freedom Restoration Act.[1] More specifically, Plaintiff alleges that on Friday, December 6, 2002, by written submission, he requested that he be allowed to observe Ramadan and attend Jumah Friday prayer services. Plaintiff contends that Defendant Gould denied him his request to observe Ramadan and denied him the ability to attend Jumah prayer services between 1:15 p.m. and 2:30 p.m. In addition, Plaintiff asserts that Defendant Gould failed to provide him with a copy of the Holy Quran

---

[1] The Supreme Court ruled on June 25, 1997, that the Religious Freedom Restoration Act (RFRA) exceeded Congress' § 5 enforcement powers. City of Boerne v. Flores, 521 U.S. 507 (1997). Because the Supreme Court has held that RFRA is unconstitutional, this Court dismisses Plaintiff's RFRA claim.

as translated by Yusif Ali. Plaintiff also complains about an alleged disparity between the services provided to Christians in the jail and those provided to Muslims in the jail. Finally, Plaintiff complains that Defendant Gould refuses to accommodate his requested name change. Plaintiff requests fifty million dollars in damages as well as various injunctive relief.

## LEGAL ANALYSIS

### I. RLUIPA

Section 3 of the Religious Land Use and Institutionalized Persons Act (RLUIPA)[2] provides that a state shall not impose a substantial burden on the religious exercise of a person confined in one of its institutions, even if it results from a rule of general applicability, unless it is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA requires the inmate to bear the burden of persuasion concerning the substantial burden element. Id. § 2000cc-2(b). If the plaintiff can meet this requirement, then the burden shifts to the government to show that such a denial furthers a compelling state interest in the least restrictive means. The Supreme Court has noted that Congress "anticipated that courts would apply [RLUIPA's] standard with "due deference to the experience and expertise of prison administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline . . . ." Cutter v. Wilkinson, 125 S. Ct. 2113, 2123 (2005)(quoting S. Rep. No. 103-111, p. 10 (1993)).

Pursuant to the analytical framework set out above, this Court must first[3] consider whether

---

[2] The Supreme Court has ruled that the sections of the RLUIPA increasing the level of protection of prisoner's religious rights do not violate the Establishment Clause. See Cutter v. Wilkinson, 125 S. Ct. 2113 (2005).

[3] In the instant case Defendant Gould does not argue that Plaintiff's beliefs are not religious in nature or that he does not sincerely hold his beliefs.

2

the challenged prison rule creates a substantial burden on the religious exercise of Plaintiff. The RLUIPA does not define "substantial burden" and the circuit courts that have addressed this issue are not in agreement. See Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004)(holding that a government action creates a "substantial burden" on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his beliefs), cert. denied, 125 S. Ct. 2549 (2005); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214 (11th Cir. 2004)(holding that a substantial burden is one that results "from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct."), cert. denied, 543 U.S. 1146 (2005; San Jose Christian Coll. V. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)(holding that "substantial burden" is one that imposes a significantly great restriction or onus upon such exercise."); Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003)(holding that a "substantial burden" on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise effectively impracticable."), cert. denied, 124 S. Ct. 2816 (2004); Murphy v. Missouri Dep't of Corr., 372 F.3d 979 988 (8th Cir.), cert. denied, 543 U.S. 991 (2004).

For the reasons set forth below this Court concludes that Plaintiff fails, under any standard, to establish that Defendant Gould's actions substantially burdened on his religious exercise. Based upon the above, the Court will analyze each of Plaintiff's claims.

**Ramadan Services**

Plaintiff alleges that Defendant Gould violated his rights under RLUIPA when he denied him the right to participate in Ramadan services. The record clearly establishes that on Friday,

3

December 6, 2002, Plaintiff made a written request[4] to participate in Ramadan services. It is uncontroverted that Defendant Gould did not receive this request until Monday, December 9, 2002. Ramadan ended on December 6, 2002.[5] These uncontested facts support the conclusion that Defendant Gould did not interfere with Plaintiff's right to participate in Ramadan services. Consequently, this Court concludes that Plaintiff has not met the substantial burden test required to establish a violation of RLUIPA.

**The Quran**

Plaintiff alleges that his rights under the RLUIPA were violated by Defendant Gould because he failed to obtain for him a specific version of the Quran that Plaintiff had requested.

The uncontroverted facts establish that on December 8, 2002, Plaintiff submitted a written request for a Quran. In response, Defendant Gould provided Plaintiff with two versions of the Quran. Plaintiff returned them saying that they were not the version he had requested. Defendant Gould then bought a copy of the Quran that was available at the commissary and provided it to Plaintiff but Plaintiff rejected this version as well. Finally, Defendant Gould informed Plaintiff that he could contact the Islamic Center or someone outside the Detention Facility to bring him the specific Quran that he wanted. Defendant Gould told Plaintiff that he would personally see that any Quran brought to the facility for Plaintiff was delivered to Plaintiff.

Again, Plaintiff has not established that Defendant Gould's conduct substantially burdened

---

[4] Plaintiff alleges that on December 4, 2002, he made a verbal request to observe Ramadan to an unidentified jailor when he was being booked into the Buncombe County Detention Facility. Such request was admittedly not made to Defendant Gould and as such he cannot be held liable for failing to act on the alleged request.

[5] Interestingly, Plaintiff admits in his Complaint that he knew that the last day of Ramadan was the day he filed his request.

his exercise of his religion. That is, it is uncontroverted that Plaintiff was provided with a Quran. This Court holds that not being provided with a specific translation of a religious text does not substantially burden Plaintiff when Plaintiff was provided several common versions of the religious text.

This is particularly true in the instant case where Defendant Gould informed Plaintiff that if someone brought this particular Quran to the jail for Plaintiff he would personally deliver it to Plaintiff. Plaintiff provides no explanation as to why he did not just have someone bring his personal Quran to the jail – a translation so important to Plaintiff, he must have possessed one prior to his arrest less than a month prior to his request to Defendant Gould for a Quran.

**Jumah Prayer Services**

Plaintiff alleges that Defendant Gould violated his rights under the RLUIPA when he failed to schedule Jumah prayer services at the precise time requested by Plaintiff.

It is undisputed that on December 6, 2002, Plaintiff requested, among other things, that he be allowed to attend Jumah prayer. It is further undisputed that on December 11, 2002, Defendant Gould informed Plaintiff that he could attend the Jumah services which had been scheduled to be held from 9:30 to 10:30 in the multipurpose room. In response to Plaintiff's dissatisfaction with the scheduled time for Jumah services, Defendant Gould apologized for his mistake[6] and adjusted the times for Jumah prayer to between 2:00 p.m. and 3:00 p.m. on Fridays. Defendant Gould rescheduled prayers to this time to be in accordance with the North Carolina Department of Corrections information on Islamic services. Plaintiff, however, keeps insisting that the prayer

---

[6] Defendant Gould states in his Answer that upon further research he learned that Jumah service times need to be for one hour between the hours of 12:00 p.m. and 3:00 p.m. (Answ. ¶ 2).

5

services must be held between 1:15 and 2:30. Since April 2003, Plaintiff has been incarcerated in another housing unit where the Jumah services are held between 1:00 and 2:00 p.m. (Gould Aff. ¶ 13).

Again, the Court must first address whether or not the Defendant's actions placed a substantial burden on Plaintiff's religious beliefs. The Court notes that despite the voluminous filings by Plaintiff, he cites no source for his persistent assertion that Jumah prayer services can only be held between 1:15 and 2:30. Moreover, Plaintiff has never asserted any rationale for why prayer services can only be held at that precise time. Consequently, this Court holds that Plaintiff has not established that Defendant Gould's action substantially burdened Plaintiff's exercise of his religion.

**Name Change**

Plaintiff also alleges in his Complaint that Defendant Gould has violated RLUIPA by refusing to recognize his Islamic name – Sharif Abdul Ali. Plaintiff argues that his new name should be placed on his prison identification card.

As an initial matter it is unclear to the Court how Defendant Gould is responsible for the failure of the facility in which he is incarcerated to place both of his names on his identification card. Plaintiff's failure to connect any action by Defendant Gould which resulted in the failure to place Plaintiff's Islamic name on his identification card results in this Court concluding that Plaintiff has failed to state a claim on this basis against Defendant Gould.

Second, Plaintiff officially changed his name August 29, 2003 – five months after he filed his Complaint. As such, Plaintiff had no basis for his name change claim at the time he filed his Complaint.

Moreover, the Court notes that on July 25, 2005, the North Carolina Department of

Corrections revised its procedures to provide for the issuance, to inmates whose names have been legally changed, of new ID cards showing both their commitment name and their new legal name. As a result, on August 26, 2005, new ID cards were issued for Plaintiff showing both his commitment name and his new legal name. See Ali v. Bennett, No. 5:04CT948-FL (E.D.N.C.). In all likelihood, the North carolina Department of Corrections actions have rendered any name change claim by Plaintiff moot.

## II. **FIRST AMENDMENT**

Plaintiff also alleges that the above conduct violated his rights under the First Amendment. The inquiry of federal courts into prison management is limited under § 1983 to whether a particular system violates any constitutional provision. See Bell v. Wolfish, 441 U.S. 520 (1979). In cases in which a prisoner asserts that a prison policy violates the constitution, the principle that inmates retain at least some constitutional rights is weighed against the recognition that prison authorities are best equipped to make difficulty decisions regarding prison administration. See Washington v. Harper, 494 U.S. 210 (1990). Accordingly, there need only be a rational connection between a prison policy and a legitimate government interest put forward to justify it. Turner v, Safley, 482 U.S. 78 (1987). For the reasons set forth by this Court in the above-RLUIPA analysis, this Court concludes that the actions complained of by Plaintiff do not impinge on or burden his ability to practice his religion and do not violate his constitutional rights.

### B. **Christian v. Muslim Support**

Plaintiff alleges that Buncombe County Detention Facility discriminates against Muslim

inmates.[7] In support of this claim Plaintiff asserts that Muslim inmates, unlike Christian inmates, must file an "Inmate Request for Religious Assistance Fact Sheet." In addition, Plaintiff complains that more Christian services are held at the facility than Muslim services.

Defendant Gould responds by stating that it is undisputed that Muslim resources are not as readily or frequently available as Christian resources. Defendant contends, however, that any disparity is the result of the fact that on any given day the facility houses a majority of Christian inmates. For example, on November 5, 2003, the Buncombe County Detention Facility housed 381 non-Muslim inmates and 8 declared Muslim inmates. (Stafford Aff. ¶ 16). Moreover, there are many more Christian volunteers than Muslim volunteers to run programs at the jail. (Stafford Aff. ¶ 18).

There is no constitutional obligation to equally allocate resources among all religious groups. See Butler-Bey v. Fry, 811 F.2d 499 453-54 (8th Cir. 1981). Not every "religious sect or group within a prison – however few in number – must have identical facilities or personnel." Cruz. V. Beto, 405 U.S. 319, 322 (1972). Plaintiff has failed to establish that Muslim inmates were discriminated against on the basis of their religion. Rather the number of inmates proclaiming affiliation with each faith strongly supports the contention that any disparity in services was based upon demand.

### III. PLAINTIFF'S MOTION TO DISMISS AND FOR DEFAULT

For the reasons set forth above, Plaintiff's Motion for Default Judgment and Motion to Dismiss are denied.

**IT IS THEREFORE ORDERED THAT:**

---

[7] RLUIPA does not forbid discrimination and consequently, Plaintiff's discrimination claim is analyzed as a constitutional claim only.

1. Plaintiff's Motion to Dismiss is **DENIED**;

2. Plaintiff's Motion for Default Judgment is **DENIED**;

3. Defendant's Motion for Summary Judgment is **GRANTED**; and

4. Plaintiff's Complaint is **DISMISSED**.

Signed: April 11, 2006

Graham C. Mullen
United States District Judge